## Case No. 13,027.

SMITH et al. v. CLARK et al.

[Brunner, Col. Cas. 345;[1] 3 Am. Law J. (N. S.) 155.]

Circuit Court, D. Massachusetts. Oct. 17. 1850.

PATENTS—INFRINGEMENT—WHAT CONSTITUTES.

Where parts of a patented article have been in general use prior to the patent, such parts may be used in another invention, and such use will not be an infringement on the patent of the first article.

[This was a bill in equity by Francis O. J. Smith and others, against Joseph W. Clark and others for the infringement of letters patent No. 4,453, granted to S. F. B. Morse, April 11, 1846, reissued June 13, 1848 (No. 118).]

B. R. Curtis and F. O. J. Smith, for plaintiffs.

C. L. Woodbury, Geo. Gifford (of New York), and R. Choate, for defendants.

WOODBURY, Circuit Justice. His honor proceeded first to construe the patent of Mr. Morse, which he did in a manner to sustain its validity, viz.: that the claim of the principle, or the use of the motive power of electro-magnetism, must be understood as being in combination with the machinery by him invented. To give it a broader signification, his honor said would be to make void the patent of Mr. Morse. Having determined the construction of the patent his honor proceeded to consider and comment on the evidence contained in the record, and after briefly considering the numerous European telegraphs, electric and galvanic, which were invented during the last century and the

present one (including Sœmering's, Ronald's, Schilling's, and one at Madrid and others), his honor proceeded to comment on the attempt of Coxe, in America, and after on the electric recording telegraph invented by a son of Massachusetts, at Long Island in 1828, Mr. Harrison Gray Dyar, which he characterized as of remarkable ingenuity, as in the application of the idea of time in regulating the space so as to compose an alphabet, and the first American who had succeeded in this purpose of recording, although the system he used differed some from both House and Morse. The experiments of Prof. Henry, at Albany, also anterior to Morse's attempt, in which he endowed the electro-magnet with power equal to raising the weight of a ton, and obviated the great difficulties which had lain in the way of using electro-magnetism. These all preceded the passage on board the ship Sulley, in 1832, when Mr. Morse and Dr. Jackson conversed on the subject, and when Mr. Morse commenced his labors. After following down the various inventions and labors of Sternheil, Gauss, Alexander, Weber, Cook, and Wheatstone, on the telegraph, to the date of Morse's application for a patent, in 1837, his honor remarked that something was wanted in all these to produce a result perfect for practical use; that among the sixty competitors who had labored for this end, Morse appeared to have got the most practical and perfect machine. The combination of the pen point and the machinery to move paper, with the telegraph, his honor thought to be that desideratum and the essential point in Morse's invention. His honor said that Mr. Morse and his assignees would be protected in the method of telegraphing claimed by Mr. Morse. The pen, a most happy thought; the rollers and paper, a most important thought; and the stenographic alphabet, the crowning thought; and any infringement on the things described, etc., would be punished. While Morse is thus secured, the same latitude is left open for his successors to invent as was accorded to Mr. Morse in improving on his many predecessors.

Now, has this patent been violated by the defendants? The defendants insist they have used nothing which was not open and public before the date of Morse's invention. While shielding the public in this right, we must not allow any one to use the invention of Morse without his assent. House's machine appears much unlike Morse's, and in its work differs in using two new powers. While Morse's is simple, that of House is so complicated as to require days of attention by mechanics to understand. While Morse's is speedy, House's gives lightning to Roman letters; his speed of breaking and closing is much greater than Morse's, and without this greater speed he could not accomplish his object. This is not the same system as Morse's, and is much more than that of Alexander. Morse's machine traces the signs intended;

---

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

the type or the lever at one end do so, and the pen at the other also. House's machine does not do this. It acts at both ends by signals, and traces nothing. This new power of axial magnetism, the invention of which is claimed by Mr. House, aids in transferring this so as to have it printed, and the U magnet of Mr. Morse would be utterly inefficient for this purpose. House's is a signal and printing telegraph, and Morse's is a writing telegraph. The electro-magnetism between the two points had been used long before Mr. Morse, and is, therefore, no infringement of his invention. House produces in his machine new results, and cannot be considered as an equivalent for Morse's, as he uses neither the pen, the lever, nor the stenographic alphabet to translate the signs, as appears from the testimony of Prof. Henry, Dr. Jackson, Prof. Hare, Col. Borden, Hibbard, Channing, etc.

His honor then commented on the originality and novelty in House's machine of the axial magnetism and the use of the air tubes and condensers, and expressed himself astounded, in examining this case, to find that so much which he had supposed to have been near an original in telegraphing, was not of late origin nor derived from Mr. Morse's, as electro-magnetism, wires, etc., but that the invention of Mr. Morse lay in a different place from what he had formerly supposed. Morse's leading novelties, his honor thought, were: (1) The local circuits. (2) Writing at a distance by electro-magnetism. (3) The stenographic alphabet. Neither the electro-magnetism, nor the Roman letters, nor the printing apparatus were invented by Morse. The local circuits and the stenographic alphabet were not used by House, nor the writing, etc.

The opinion of the experts who testified in the case as to the principles of the two machines, stood thus: Mr. Morse, who was not regularly educated to mechanics, and whose profession was that of a portrait painter, and beside him Mr. Foss, his assistant, who until a few days past had been employed only as a grocer and baker, alone regarded this as an infringement. On the other hand, a numerous body of experts in mechanics, some twelve or fourteen, embracing some of the most talented men in the country in their profession, unite in opinion that this machine of House's is no infringement. Some of these gentlemen say the two machines are as unlike as a goose quill and a printing press. His honor said he thought the difference of Mr. Morse and Foss from the rest of the experts arose from their attaching a wrong meaning to the word "principle," as used in the patent law, and that, setting aside the battery and wires, etc., which were public long before Morse began to invent, there could be no question of infringement. The public had the same right to make and re-employ the old modes, the same privilege to make improvements as Morse had in 1832. His honor said,

on considering the whole, I do not think the plaintiff entitled to an injunction. His honor expressed his sense of the weight due to the decision of Judge Monroe of Kentucky, against O'Reilly [Case No. 9,859], but thought it did not apply in this cause, and said that his examination of the evidence in this cause had impelled him to take the views of the subject he had stated, and which, if wrong, he felt gratified it was in the power of another and higher tribunal to reverse.

[NOTE. A final decree was rendered on the 17th day of October, 1850, for the respondents, and on the same day plaintiffs appealed to the supreme court, and on the 30th of October, 1850, filed his appeal bond with sureties, whereby execution on the decree was suspended. A motion to docket and dismiss the appeal was made and overruled. 12 How. (53 U. S.) 21.
[For other cases involving this patent, see Morse & Bain Tel. Case, Case No. 9,861; Smith v. Downing, Id. 13,036; Same v. Selden, Id. 13,104; Same v. Eli, Id. 13,043; O'Reilley v. Morse, 15 How. (56 U. S.) 109.]